## CITY OF MADISON HEIGHTS v. MANTO.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—ELIMINATION OF NONCONFORMING USES.

    It is the policy of the State and various communities that uses of property not conforming to municipal zoning ordinances be gradually eliminated.

2. SAME—TRAILER PARK—SEWERS—EVIDENCE.

    Defendant trailer park owner's contention that park was not unable to meet competition and was enjoying full occupancy

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 25 *et seq.*
[3] 3 Am Jur, Appeal and Error § 895.
[4] 58 Am Jur, Zoning § 156.
    Zoning: changes, after adoption of zoning regulations, in respect of nonconforming existing use. 147 ALR 167.
[5] 3 Am Jur, Appeal and Error § 769.

and had been operated at or near full capacity for many years, except for diminution during business recession *held*, to have been well sustained in city's suit to enjoin installation of temporary sewage facilities because of city's claim that defendant was unable to meet competition, due to gradual obsolescence and wearing out of facilities.

3. APPEAL AND ERROR—CHANCERY CASES—FINDING OF FACT.

A trial court's finding upon an issue of fact is not conclusive upon the Supreme Court, but such finding in a chancery case is entitled to weighty consideration.

4. MUNICIPAL CORPORATIONS—TRAILER PARK—SEWERS—ZONING ORDINANCE—NONCONFORMING USE.

Installation of temporary sewage facilities for trailer park pursuant to plan approved by State health department, not involving an expansion or enlargement of the park, but which was nothing more than routine repair made necessary by deterioration was within the right of owner of property upon which there exists a nonconforming use under municipal zoning ordinance (CLS 1956, § 325.281 *et seq.;* City of Madison Heights Zoning Ordinance).

5. APPEAL AND ERROR—CONCISE STATEMENT OF FACTS.

The court rules require an appellant to make to the Supreme Court a clear and concise statement of favorable and unfavorable facts of the case in chronological form, without argument or bias, and the appellee has the duty to point out insufficiencies or inaccuracies in such statement, not to make a competing statement necessitating use of both appendices and transcript to determine inaccuracies and insufficiencies (Court Rules No 67, § 2; No 68, § 2 [1945]).

Appeal from Oakland; Doty (Frank L.), J. Submitted January 8, 1960. (Docket No. 16, Calendar No. 48,193.) Decided April 11, 1960.

Bill by City of Madison Heights, a municipal corporation, against William H. Manto, Jr., and Josephine Manto to restrain installations in trailer park. Cross bill to validate existence of trailer park as a nonconforming use under zoning ordinance and to enforce approval of modernization and improvement plan. Decree for defendants including order to permit construction when public sewer becomes available. Plaintiff appeals. Affirmed.

*H. Eugène Field,* for plaintiff.

*Philip D. Dexter,* for defendants.

Smith, J.   In this case we consider the continuation of a nonconforming use.  Specifically, the property is a trailer park in the city of Madison Heights. Under the zoning ordinances of the city the area in which the trailer park is located is classified as residential 1-family dwelling.  The defendants' use, it is agreed, is nonconforming.

The controversy arises over the sewage disposal for the park.  No public sewers being available, the park has for years relied upon a septic tank, tile field system.  The park had experienced problems with sewage disposal and general drainage since 1951.

Shortly after defendants Manto purchased this park (in June of 1956) the services of a sanitary engineer were engaged to prepare plans for "correcting and improving the sewage disposal facilities."   The first plan called for a new sand bed under a covered structure.  This was amended because of its probable expense.  The next plan was to enlarge and relocate the tile field in the northeast corner of the park.  This was presented to the proper authorities for approval about the time a new sewer bond issue was under consideration and some discussion was had about the desirability of tying the park sewage system in with the proposed public sewer.  It soon developed, however, that the new construction was not in the immediate future. Consequently a plan was prepared by the engineers to "tide over" the park until the proposed public sewer came into existence, as well as a plan for ultimate connection with the proposed new sewer.  As a part of the overall project under consideration the defendants entered into an agreement with the State as follows:

"State of Michigan
"Department of Health
"Agreement

"Whereas William Manto, Jr., as owner has made application for a 1958 trailer coach park license for the Madison Heights Trailer Park located at 858 West Girard avenue, Madison Heights, Michigan, an existing trailer coach park previously licensed for 30 trailers; and

"Whereas said Madison Heights Trailer Park has an inadequate sewage disposal system, correction of which is immediately necessary for the protection of the public health;

"Now therefore in consideration of the issuance of the license applied for, I hereby agree for myself, successors and assigns that I will (1) on or before 30 days from the date of the issuance of the license, install a 2,000-gallon overflow tank in accordance with the plans attached hereto; (2) cause the contents of said tank to be removed whenever necessary and before overflow shall occur, said contents to be disposed of in conformity with the provisions of PA 1951, No 243 (CLS 1956, § 325.281 *et seq.*, as amended by PA 1957, No 42 [Stat Ann 1956 Rev and Stat Ann 1959 Cum Supp § 14.434(1) *et seq.*]); (3) take any and all other steps which are or may become necessary to prevent sewage-contaminated water from said sewage disposal system from flowing to the surface of the ground or in any way constituting a public health hazard or nuisance.

"I further agree that as soon as reasonably possible after the completion of a trunk sewer by the city of Madison Heights along Stephenson highway adjacent to the said trailer coach park, or upon any other public sewer to which connection may be made becoming available, I will reconstruct the sewage disposal system for said trailer coach park in accordance with plans heretofore filed with the State health commissioner, or such changes therein as may be

approved by the State health commissioner, and will connect same to the public sewer.

> "Madison Heights Trailer Park
> "By: /S/ William Manto, Jr.
> "William Manto, Jr., Owner
> "7508 Varjo
> "Detroit 12, Michigan."

It was the testimony of Mr. Robert Coleman, assistant director of sanitation for Oakland county, that the agreement with the State (above quoted) has been complied with (in fact that "the operation of this trailer park could not have been continued in a sanitary manner without the installation" of such equipment). What is before us is the city's effort to enjoin defendants "from installing any further equipment in or upon said premises contrary to the spirit and intent of the zoning ordinance of the city of Madison Heights." What the city is aiming at in this language is to stop the defendants' completion of its plan in defendants' exhibit A.* The defendants filed a cross-bill praying that the city be enjoined "from prosecuting * * * sundry violation tickets relating to the premises," that the plans for redesign and modernization of the park be approved by the court and the plaintiffs be ordered to approve the same, and that the use of the park by as many as 30 trailers be decreed a valid nonconforming use. The trial chancellor, upon proofs, denied the prayer of the bill of complaint, granted the cross-bill, and so decreed. The city appeals.

This is the city's position on appeal: It is the policy of the State, it says, and of the community, that there shall be the gradual elimination of a nonconforming use, citing *Cole* v. *City of Battle Creek,* 298 Mich 98; *Austin* v. *Older,* 283 Mich 667;

---

* This exhibit is a detailed drawing of a plan approved by the State and county health departments for the improvement of the trailer park and its sanitation facilities.

*Paye* v. *City of Grosse Pointe,* 279 Mich 254; and McQuillin, Municipal Corporations (3d ed), §§ 25-.183, 25.189, 25.205.   This park, it then contends, "has deteriorated to a point where it no longer can meet competition because of its gradual obsolescence and the wearing out of its facilities [and] it should not be allowed to renew its facilities and thus enable it to expand again."

Defendants do not dispute the law cited but insist that it has no application to the facts before the court.   The park, it contends, is not unable to meet competition, but, on the contrary, is enjoying full occupancy, having been operated at or near capacity for many years, though suffering (at the time of trial) some diminution of tenancy due to the business conditions.   The proofs, we will add, well sustain this contention.   Defendants then go on to argue that what is sought to be done here is merely ordinary maintenance, not such construction as to amount to a change in the fundamental purpose of the premises (see *Paye* v. *City of Grosse Pointe, supra*), nor, in fact, even an "extension" of the nonconforming use (see *Austin* v. *Older, supra*).

In the context before us this is an issue of fact upon which the trial chancellor's finding, while not conclusive upon us, is entitled to weighty considerations.   Upon review of the record it is clear that septic tank, tile field systems of the type described in this record, present a constant maintenance problem.   The life expectancy of such fields varies, depending upon the soil conditions.   When the field "fails," as the record puts it, a nuisance may and probably will result unless the field is relocated. What happens, in less technical language, is simply that the system wears out, or exhausts its usefulness, much as water pipes may ultimately become clogged due to impurities in the water.   The relocation of such fields, or of devices to permit them to operate

more efficiently, convey off or eliminate the sewage, effects in no way any change in the fundamental nature of the operation. We note that the acreage devoted to the project remains unchanged, as well as the number of trailer units licensed. We are in agreement with the trial chancellor that there is no more here than routine repair made necessary by deterioration. Such ordinary maintenance is within the right of the owner of property upon which there exists a nonconforming use and is not a prohibited expansion or enlargement of such use.

We are constrained to make one additional observation: It concerns the presentation of this case to us. The court rules state that appellant shall make to this Court a clear and concise statement, in chronological form, without argument or bias, of the facts, both favorable and unfavorable, of the case, together with the remaining matters noted in Court Rule No 67, § 2 (1945).*

If there are insufficiencies or inaccuracies in this statement it is the appellee's duty to point them out, seriatim, with reference to the appendix in support thereof. (Court Rule No 68, § 2 [1945].*)

Of late years, however (and we observe it in the case before us), a practice has grown up that the parties submit competing statements of fact. Rather than pointing out appellant's errors the appellee simply submits his own fact statement. The Court is then presented with the problem of putting the 2 statements, and the appendices, sometimes, in fact, the transcript, alongside each other and itself ascertaining appellant's inaccuracies and insufficiencies. This is a laborious task for anyone, even trial counsel, it will be conceded, but the rules do not contem-

---

. * Amendments in 347 Mich xxii, xxiv, leave these provisions unchanged.—Reporter.

plate this Court's assumption of such burden.   The practice should be discontinued.

Decree affirmed.   Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.