Bernard S. Meyer, J.
This article 78 proceeding concerns property known as 17 Hillside Avenue in Great Neck Estates. It is a corner property fronting 140 feet on Elm Street and 100 feet on Hillside Avenue, and thus is 14,000 square feet in area. Petitioners Young own the entire parcel and have contracted to sell to petitioner Pesta the interior 60 feet fronting on Elm Street, which is unimproved land. The sale will leave the Youngs with a parcel fronting 80 feet on Elm Street and 100 feet on Hillside Avenue, on which is located a one-family residence. The property is in a Residence C District which requires only 6,000-square-foot area and 60-foot frontage, so *149 both the 6,000-foot Festa parcel and the 8,000-foot Young property are buildable plots. However, section 30.03 of the village ordinance provides that “ No lot shall be sold, divided or set off in such a manner that either the portion sold, divided or set off, or the portion remaining * * * (b) .shall fail to provide the yards or other open .spaces required by the [applicable] regulations * * * in respect to any building or use then existing * # * or (d) shall contain any building or use not permitted by the provisions of this Ordinance.” The Building Inspector having denied a permit to erect a building on the Festa parcel “ for failure to comply with Section 30.03 ”, the matter was appealed to respondent Board of Zoning Appeals. Although no specific variance request was before it, the board treated the appeal as an application for a variance (see Village Law, § 179-b) and after a full hearing on ¡two separate days at which evidence was introduced on behalf of both petitioners and the board, denied the application. In this proceeding petitioners ask that the board’s determination be annulled and that it be directed to grant petitioners’ appeal. For the reasons hereafter stated, the prayer of the petition is granted and the matter is remanded to the board with directions to reverse the Building Inspector’s denial of a building permit and to direct that official to issue the permit applied for.
The basic rule is that: ‘ ‘ Where the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance ” (Matter of Fulling v. Palumbo, 21 N Y 2d 30, 33). Since petitioner Festa has contracted to purchase the 60-by 100-foot parcel for $20,000 and the uncontradicted evidence is that it is worth no more than $5,000 as an adjunct to the property being retained by the Youngs, significant economic injury exists. To meet its burden of going forward with evidence demonstrating that some legitimate public interest will be served by denial of the variance, respondent board adduced evidence that the house was oversized for an 8,000-square-foot parcel in six separate respects. Considering each of the grounds separately and all together, the court concludes that the board’s finding that there would be an “ adverse effect on the health, safety and welfare of the inhabitants of the Village ” is not supported by the evidence.
The six deviations on which the board based its decision, and the court’s reasoning with respect to each, are as follows:
*150 1. The existing house is 35 feet 9% inches in height, whereas section 80.01(2) of the ordinance limits building height to 35 feet above ground level. The board’s decision concedes that this nonconformity may be continued under section 110.01 of the ordinance. That concession and the fact that the deviation has existed since 1927 make it apparent that the excess 9% inches does not adversely affect the public. Moreover, reduction of the size of the plot on which .stands a building nonconforming as to height, setback and the like does not affect the right to continue the nonconformance, so long as the size of the reduced plot is conforming (Matter of Schwartz [Board of Zoning and Appeals], N. Y. L. J., Jan. 21, 1966, p. 18, col. 7).
2. Section 80.01(5) of the ordinance requires a 20-foot front yard. The front .steps and decorative arch extend from 18 inches to 4% feet into the front yard. It is not necessary to determine whether this constitutes an encroachment, for the board’s decision likewise concedes that the nonconformity may be continued under section 110.01.
3. and 4. The effect of selling the interior 60 feet fronting on Elm Street to Festa will be that the present rear yard (opposite the Hillside Avenue frontage) will become a side yard and the present side yard (opposite the Elm Street frontage) will become the rear yard. The ordinance requires a side yard of 10 feet (§ 80.01 [7]) and on .the 8,000-foot parcel there would be a 27-foot side yard, which is more than required. However, the ordinance requires a minimum rear yard of 15 feet (§ 80.01 [6]) as interpreted in the board’s decision and the 8,000-foot parcel will have a rear yard of not les.s than 12 feet. Furthermore, under section 100.07 of the ordinance the side wall may not exceed in height the width of the required side yard (in this case 10 feet) plus 15 feet, or a total of 25 feet. The present rear wall, which after the split off to Festa will be the side wall, is, however, 34 feet 2 inches in height. As to both the rear yard and side wall deviations, respondents found, and on .this application, vigorously argue, that if they are allowed, the land would be overcrowded and light and air obstructed to the public detriment. How there can be overcrowding when the rear yard is 12 feet and the side yard 27, but no overcrowding when the rear yard is 15 feet and the side yard 10, is nowhere explained by the board. The erection of a house on the parcel being sold to Festa cannot be the answer, for by the 6,000-square-foot requirement the Village Board has determined that maintenance of one-family homes on both the 6,000-foot parcel and the 8,000-foot parcel would not constitute overcrowding. Nor can it be the maintenance of the existing house on the 8,000-foot parcel, for *151 it is only the arbitrary designation of the yard opposite the narrower frontage as the rear yard that produces the deviation. With no change in .the building, it would be conforming as to side and rear yards were the labels reversed.
On like reasoning the rear yard deviation will not support a finding of adverse light and air effect, and while the added 9 feet 2 inches of side wall may at certain times of the day result in less light for the occupants of the house .to be erected on the property being sold to Festa, (1) Festa is a petitioner herein (and the owner of the house adjoining on the north, Henry Portnow, also appeared before respondents and urged that the relief sought by petitioners be granted), and (2) there is no evidence to sustain the conclusion that the public interests as distinct from the interests of the adjoining property owners will be affected in any way.
5. Section 80.01(4) of the ordinance limits building area to “ 25% of the area of the lot ”, or, for the 8,000-foot parcel, 2,000 square feet. Exhibit A annexed to the answer shows that the Building Inspector computed the building area as 2,053.55 feet, but in doing so subtracted the area of one setback but failed to subtract a second setback of 47.25 square feet. When that correction is made, the area is 2,006.3 feet and the deviation so small as to make applicable the maxim de minimis non curat lex.
6. Finally, the board found that there is no sanitary sewer in the district, that a cesspool is located in the 12-foot northerly yard of the 8,000-foot parcel and, having been constructed prior to the Plumbing Code, does not conform to its provisions, which require that a cesspool be located 20 feet away from the walls of a dwelling and at least 3 feet from the nearest property line. It noted that the cesspool “ can be continued as a non-conforming use as long as it does not cause trouble,” but concluded that if it had to be replaced there would be no yard large enough to accommodate a cesspool in conformance with the present Plumbing Code, and, therefore, there would be danger to public health. The Plumbing Code of the village has not been submitted, but unless it is inconsistent with the Zoning Ordinance (which, in the last sentence of section 110.02 relating to restoration of nonconforming uses, provides “ Nothing in .this ordinance shall prevent the restoration of a wall or .structure declared unsafe ”), it would appear that the board errs in its basic premise and that the existing cesspool could be restored in its present location (see, also, City of Madison Hgts. v. Manto, 359 Mich. 244 ; 2 Rathkopf, Law of Zoning & Planning, p. 59-5; Anderson, Zoning Law & Practice in New York State, § 6.40; Ann 87 ALR 2d 4). It is not necessary now to decide that question, however, for *152 there is nothing in the record to indicate when, if at all, the existing cesspool will require replacement, nor to suggest that when that eventuality comes to pass, if it does, public sewers will not be accessible. Moreover, the possibility that at .some time in the future this nonconformity may terminate is a risk which every holder of nonconforming property assumes, and furnishes no basis for denial of the right to present use. There being a presently existing, though nonconforming cesspool, the public interest will not be adversely affected by granting the permit applied for.
Except as to the patent miscalculation of building area, the board’s version of the facts has been assumed in the foregoing discussion. Making that assumption, the court finds no support in the record for the board’s conclusion that the public interest will be served by denial of the permit applied for. It follows that petitioners are entitled to judgment.